# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

MARY J. PITTSONBERGER,

        Plaintiff,

v.                                   CIVIL ACTION NO.  5:10-cv-00044

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

### MEMORANDUM OPINION AND ORDER

This is an action seeking review of the final decision of the Commissioner of Social Security ("Defendant") denying Plaintiff's application for Disability Insurance Benefits ("DIB"), under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Standing Order entered on January 15, 2010 [Docket 4], this action was referred to United States Magistrate Judge R. Clarke VanDervort for submission of proposed findings of fact and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).  Neither party has filed briefs.

On February 2, 2011, Magistrate Judge VanDervort submitted proposed findings and recommended that the court (1) reverse the final decision of the Commissioner; (2) remand this matter for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g); and (3) dismiss this matter from the Court's docket.  (Proposed Findings and Recommendation ("PF & R") [Docket 9] at 15-16.  Neither party has filed objections.

I.

The Federal Magistrates Act requires the district court to make a de novo review upon the record of any portion of the proposed findings and recommendations to which written objections have been made.  28 U.S.C. § 636(b)(1); *see also* Fed.R.Civ.P. 72(b).  Conversely, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.  *See Thomas v. Arn*, 474 U.S. 140, 149-50, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *see also Camby v. Davis*, 718 F.2d 198, 199 (4th Cir.1983) (holding that district courts may adopt proposed findings and recommendations without explanation in the absence of objections). A district court judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  A district court's authority to choose among these options is independent of the statutory duty to afford review to those portions to which objections are addressed. *See Camby*, 718 F.2d at 199-200 ("If no objection were made, for example, it could hardly be argued that the judge must accept the [magistrate judge's] report if it contained an error of law apparent on its face.").  As such, it is wholly within the district court's discretion to accept, reject, or modify a magistrate judge's proposal irrespective of any objections by the parties. *See United States v. Raddatz,* 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). Coinciding with district courts' discretion under the Federal Magistrates Act is the responsibility to ensure the just disposition of matters referred to magistrate judges. *See Mathews v. Weber*, 423 U.S. 261, 271, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976); *see also Raddatz*, 447 U.S. at 683.

II.

Plaintiff applied for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI") in 2004, alleging disability due to chronic neck and back pain, depression and tingling in her hands and right leg.  On December 12, 2005, an Administrative Law Judge ("ALJ") issued a final decision denying her application, determining that she was not entitled to benefits.  She appealed this decision to federal district court and the court remanded the matter because the "ALJ erred in weighing the medical evidence of record related to Claimant's mental impairment and in finding that Claimant's mental impairments were not severe." *Pittsonberger v. Astrue*, No. 2:06-cv-00265 (S.D. W.Va. May 31, 2007).  On May 20, 2009, an ALJ issued another decision determining that Plaintiff was not entitled to disability benefits.  Plaintiff appeals that decision, alleging that the prior errors of the Administrative Law Judge ("ALJ") were not addressed in the latest opinion. (Compl. ¶ 5.)

In the opinion, which became the final decision of the Commissioner, the ALJ rejected the validity of Plaintiff's IQ scores as obtained from a November 2, 2005, evaluation by Jamie Bailey, B.S., L.S.W., and Mari Sullivan Walker, M.A., L.P.C.[1]  (R. 346.)  He stated, "The undersigned totally rejects the validity of these IQ scores as they are not supported by the evidence as a whole, including the claimant's educational and vocational history."  (R. 346.)  In support, he pointed to the opinion of Dr. Jeffrey Boggess, Ph.D., an impartial medical expert, that the IQ scores were invalid.  He also cited the fact that Plaintiff reported during one evaluation that she graduated from

---

[1]In that evaluation, Plaintiff obtained a verbal IQ score of 63, performance IQ score of 67 and a full scale IQ score of 62.  (R. 346.)

high school and generally made C's on her coursework, and the opinions of evaluating psychologists, Ms. Smith and Dr. Gouty, that her vocational history was not reflective of her IQ scores.  (R. 346.)

In his PF&R, Judge VanDervort found that the ALJ failed to consider whether Plaintiff met or equaled the listing of impairments for disability by mental retardation or autism.  (PF&R 12 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 ("Listing 12.05C")).)[2]  Listing 12.05C describes circumstances in which mental retardation is severe enough to preclude gainful activity.  This listing is satisfied when one of four requirements is met, including, *inter alia*, an IQ score of 60 through 70 combined with a physical or mental impairment imposing work-related limitations.  (Listing 12.05C.)  The magistrate judge found that while the ALJ addressed Plaintiff's IQ scores, he does not address any of the other requirements in Listing 12.05C.  (PF&R 14.)  Moreover, Dr. Boggess also testified that he would need to see Plaintiff's school records before he could opine that her IQ scores were invalid.  (PF&R 15; R. 576.)  Noting that the record lacked certain pieces of evidence, the magistrate judge recommended that this case be remanded for further consideration of Plaintiff's mental impairments.  (PF&R 15.)

## III.

Section 405(g) of the Social Security Act provides, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .."  42 U.S.C. § 405(g).  This language limits the Court's role in reviewing the ALJ's decision to determine

---

[2]At the third step in the disability evaluation process, a claimant will be found disabled if his impairment meets or equals one of the listings in the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

whether his findings are supported by substantial evidence.  *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) ("Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence.").

"Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).  Substantial evidence has also been held to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Hays*, 907 F.2d at 1456 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).  In making its determination, the Court must look to "the whole record to assure that there is a sound foundation for the Secretary's findings, and that his conclusion is rational."  *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971).   When the Commissioner's decision clearly disregards the overwhelming weight of the evidence, the Court may modify or reverse the decision. *Id.*

IV.

After a de novo review, the Court finds that the record contains substantial evidence to support the ALJ's decision.  He weighed heavily the objective evidence that Plaintiff could keep a checkbook and manage her own finances and that her vocational history indicated job duties requiring cognitive skills that did not reflect mental retardation.  (R. 346.)  This evidence was reported by Plaintiff herself and in the evaluations by doctors and medical experts contained in the record.  As to her IQ, in rejecting her scores the ALJ relied on the objective evidence of her mental

5

capacity noted above and Dr. Boggess's November 7, 2007, testimony in which he opined that the scores are not reflective of someone with Plaintiff's education and skills, finding "the IQ's highly suspect in this evaluation."  (R. 346.)

Plaintiff's only specific challenge to the ALJ's opinion appears to be that he failed to address the errors noted in Magistrate Judge Stanley's 2007 opinion recommending remand.  Judge Stanley found that the ALJ "erred in weighing the medical evidence of record related to Claimant's mental impairment and in finding that Claimant's mental impairments were not severe."  *Pittsonberger v. Astrue*, No. 2:06-cv-00265 at 11 (S.D. W.Va. May 31, 2007).  Presumably Plaintiff does not challenge the findings with respect to her physical condition.

The evidence in the record with respect to Plaintiff's mental impairments is as follows:

- Sunny Bell, M.A., diagnosed Plaintiff with Depressive Disorder in an evaluation on December 20, 2004.  (R. 148.)

- Jeffrey Harlow, Ph.D., noted in his psychological evaluation on January 22, 2005, that her impairments were not severe (R. 184.)  This evaluation was reviewed and affirmed by Dr. Debra Lilly.

- A psychological evaluation signed by both Jamie Bailey, B.S., L.S.W., and Mari Sullivan Walker, M.A., L.P.C, and dated November 11, 2005, that included her IQ scores and several other tests indicating Plaintiff suffered from anxiety and depression.  (R. 215).  The evaluation states that "entry into the work world" would exacerbate Plaintiff's symptoms, but also that she is "capable of managing her own financial affairs and the routine tasks of daily living independent living [sic] within a rural setting with a supportive structure." (R. 216.)  This evaluation reported that Plaintiff had "none" or "poor" ability to function in every category in the assessment of her ability to do work-related activities, including "use judgment" and "function independently."

- A second evaluation was done by Bailey and Walker on June 4, 2009.  (R. 330.)  This evaluation again diagnosed Depressive Disorder and severe depression, and reported that "If granted benefits, [Plaintiff] will require assistance with managing benefits."  (R. 337.)

- A psychological evaluation by Dr. Tony Goudy, supervised by Dr. Alicia Smith, dated July 25, 2008, in which Plaintiff was found to be oriented, functioning in the high borderline to low average range intellectually, and to be suffering from severe levels of depression and

anxiety with some limitations.  The doctors noted that caution must be exercised when interpreting Plaintiff's profile because her answers were extreme and purposeful, which is indicative of questionable validity.

The ALJ considered these findings which included Plaintiff's diagnosis of Depressive Disorder and also normal memory skills, concentration, persistence and pace.  He also considered her daily activities, relationship with her husband and medical treatment, and found that she is not as psychologically limited as alleged.  (R. 350.)  In weighing this evidence, the ALJ found that the experts' reports of Plaintiff's capabilities and daily activities undermined limitations implied by her IQ score.  Plaintiff's testimony of her abilities, her testimony that directly contradicts some facts stated in the Bailey/Walker report, the fact that the Bailey/Walker evaluations are inconsistent with other evidence, and the evidence from  Drs. Boggess, Harlow, Gouty and Smith substantiate the ALJ's findings.  (R. 290.)

At the November 7, 2007 hearing, the ALJ stated that he would hold the record open after the hearing was over specifically to "get school records to include all achievement, grades, et. cetera."  (R. 521.)  After that hearing, the record was supplemented with records from Dawson-Bryant High School that reveal that Plaintiff's high school GPA was 1.23 on a 4.0 scale, and she ranked 117 out of her class of 122. (R. 480.)  The ALJ reveals in his opinion that after the November 7, 2007 hearing, a supplemental hearing was held on August 12, 2008, and another supplemental hearing was held on March 31, 2009, at which Dr. Boggess and Patricia Posey, an impartial vocational expert, testified.  (R. 342.)

The record contains transcripts of the November 7, 2007 hearing and the August 12, 2008 hearing, but not the March 31, 2009 hearing.  One of the purposes of the March 31, 2009 hearing was for the experts to testify to Plaintiff's mental impairment with the benefit of her school records

and the report and details of the July 25, 2008, psychological evaluation by Dr. Goudy and Dr. Smith, in which Plaintiff was found to be oriented, functioning in the high borderline to low average range intellectually, and to be suffering from severe levels of depression and anxiety with certain limitations. (R. 605-07.) Though relevant, a review of this transcript is not necessary to the Court's determination.

The ALJ noted in his opinion that after the November 7, 2007 hearing Dr. Boggess was sent records that were not previously available to him, and Dr. Boggess "indicated on January 11, 2008, that after reviewing this evidence his testimony did not change."[3] (R. 352.) The ALJ also stated that Dr. Boggess testified on March 31, 2009, that Plaintiff's psychological test scores (other than the IQ scores) indicated that the findings of limitations made by Dr. Goudy and Dr. Smith were invalid. The ALJ gave significant weight to Dr. Boggess's opinions because he found them to be consistent with the psychological evidence as a whole. He also cited the vocational expert's testimony that jobs existed in the national economy for a person of Plaintiff's age, education, work experience, and residual function capacity. (R. 355.)

The ALJ weighed the evidence and found that Plaintiff did not meet the criteria of the relevant disability listings. He rated Plaintiff's mental functionality according to the four broad areas of functional limitations set forth in 20 CFR § 404.1520a, which include activities of daily

---

[3]Evidence of Dr. Boggess' January 11, 2008 "indication" does not appear to be in the record. However, the record contains a blank form dated January 10, 2008, signed by the ALJ and addressed to Dr. Boggess purporting to forward two new pieces of evidence to Dr. Boggess and asking him to sign on one line if the new exhibits do not change his testimony, or to sign on another line and provide comments if his testimony does change. (R. 411.) The Court infers from the evidence and findings of the ALJ that this form was sent to Dr. Boggess on January 10, 2008, and he returned it the next day having signed the line indicating that his testimony does not change.

living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  (R. 347.)  After rating Plaintiff's limitation areas mild, moderate, moderate and none, respectively, the ALJ went on to determine that her mental impairments do not meet the listed mental disorders set forth in Section 12.04 (Affective Disorders) and 12.06 (Anxiety Related Disorders) of the Listing of Impairments.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06.  As noted above, he did not assess her limitations under Section 12.05C (Mental Retardation) because he rejected the evidence of her IQ scores, which may have, along with other criteria, qualified her for that listing.

"In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the Secretary."  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Here, evidence is sufficient to justify the ALJ's rejection of Plaintiff's claims.  *See Craig*, 76 F.3d at 590.  If this case were before a jury, the evidence would be sufficient for the Court to refuse to direct a verdict, which is one of the accepted definitions of "substantial evidence" in this circuit.  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  There is substantial evidence to support the Commissioner's decision in this case, and the decision was based on the correct application of the law.  *See Craig*, 76 F.3d at 589.

Accordingly, the Court, respectfully, declines to adopt the magistrate judge's proposed findings and recommendation.  For the reasons stated above, the Court **ORDERS** that the final decision of Commissioner be **AFFIRMED** and that this matter be **DISMISSED** from the Court's Docket.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        March 30, 2011

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

10